LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Date: August 10, 2020
Time: 1:30 p.m.
Crtrm.: 5D

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

# TABLE OF CONTENTS


I. INTRODUCTION .......... 4

II. THE UNCONTROVERTED FACTS .......... 4

III. WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT .......... 5

A. The Section 11207(b) Safe Harbor .......... 5

B. Wells Fargo Is Entitled To The Safe Harbor Because It Processed The Wire Using Automated Procedures Based On The Account Number Alone And Without Actual Knowledge Of The Discrepancy .......... 7

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) ........ 6

*TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021 (2004) ........ 6

*Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239 (2007) ........ 9

**Statutes**

California Commercial Code § 11207 ........ 6, 9, 10

California Commercial Code § 11207(a) ........ 4

California Commercial Code § 11207(b) ........ 4, 5, 9

California Commercial Code § 11404 ........ 8

Uniform Commercial Code article 4A ........ 9

Uniform Commercial Code article 4A-207 ........ 6

**Other Authorities**

12 C.F.R. § 229.10(b) ........ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In October 2018, Plaintiff fell for a common business email compromise scheme. A hacker spoofed a business associate's email, and directed Plaintiff to wire $223,991.45 to a Wells Fargo account ending in x3420. Plaintiff complied without first verifying the instructions.

On October 5, 2018, Wells Fargo processed the wire transfer order automatically, without human intervention, based on the account number alone. Account x3420 was credited with the $223,991.45 within seconds. At the time, Wells Fargo was unaware that the actual recipient of the funds (*i.e.*, the owner of account x3420) was different than Plaintiff's intended beneficiary. Indeed, it was not until four weeks later—when Plaintiff's bank requested that the funds be returned—that Wells Fargo was alerted to the alleged mismatch.

Plaintiff now sues Wells Fargo, alleging that it wrongfully processed the wire transfer order in violation of California Commercial Code section 11207(a). The claim fails because Wells Fargo falls under the safe harbor of section 11207(b)—which is a complete defense—since Wells Fargo did not have actual knowledge of the mismatch when the wire was processed. This is because the wire was processed using automated means, without any human intervention, based on the account number alone. Judgment should therefore be entered in Wells Fargo's favor.

## II. THE UNCONTROVERTED FACTS

On or about October 1, 2018, Plaintiff received a fraudulent email stating that it was from Plaintiff's vendor, RAD Architecture, Inc. ("RAD" or "Intended Beneficiary"), and directing Plaintiff to wire funds due from Plaintiff to RAD's Wells Fargo account ending in x3420. Compl., ¶5.

On October 2, 2018, ***without verifying the wire instructions***, Plaintiff instructed its bank to wire $226,991.45 to Wells Fargo account x3420. Compl., ¶7.

On October 5, 2018, Wells Fargo received a wire transfer order from Citibank, N.A. for which Grand Bayman Belize Ltd. ("Plaintiff") was the originator. Statement of Undisputed Facts ("SUF") 1. The wire transfer order was for $226,991.45 ("Wire Transfer"). SUF 1.

The Wire Transfer identified Wells Fargo account x3420 ("Account x3420") as the intended beneficiary account number; it also listed RAD Architecture, Inc. and RAD Architecture, Inc.'s address. SUF 2.

Wells Fargo processed the Wire Transfer and deposited the funds into Account x3420 automatically, without human intervention, based on the beneficiary account number alone. SUF 3-8. Wells Fargo did not have actual knowledge that the name of the intended beneficiary in the Wire Transfer order did not match the name of the account holder of Account x3420. SUF 9.

By October 17, 2018, the funds had been withdrawn and Account x3420 closed. SUF 10.

On November 1, 2018—*i.e.*, four weeks after the wire was received and processed on October 5, 2018—Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. This was the first time Wells Fargo learned about a potential issue with the Wire Transfer.

## III. WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT

### A. The Section 11207(b) Safe Harbor

Section 11207(b) provides immunity from liability—a "safe harbor"—for banks that process wire transfers based on the beneficiary account number contained in wire transfer instructions. (Com. Code § 11207(b).) Section 11207(b) provides, in pertinent part:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply: … **if the beneficiary's bank does not know that**

> **the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. The beneficiary's bank need not determine whether the name and number refer to the same person.

Cal. U. Com. Code § 11207, emphasis added.

In other words, beneficiary banks have no liability for a mismatch between a sender's intended and actual recipient unless they have actual knowledge of the mismatch. The safe harbor allows banks to employ automated means to process high volumes of wire transfers. Cal. U. Com. Code § 11207, cmt. 2 (noting that automated processing is economical and reduces clerical errors).

Knowledge, in this situation, means **actual knowledge** at the time of payment. *TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1032 (2004); Cal. U. Com. Code § 11207, cmt. 2. Actual knowledge of an inconsistency "does not exist unless bank personnel handling the transaction are aware that the name of the owner of the account number designated in the wire bears no resemblance to, and has nothing in common with, the named beneficiary." *TME Enters., Inc.*, 124 Cal. App. 4th at 1025. Constructive knowledge based on account records is not sufficient. *Id.* .

Moreover, a beneficiary bank has no affirmative duty to determine whether there is a conflict between the beneficiary identified in the wire instructions and the accountholder (*i.e.*, the "actual" beneficiary). *Id.* at 1032; *accord Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) (applying UCC 4A-207 and noting that the benefits of automated payments would be lost if beneficiary banks had a duty to determine whether the beneficiary account number and name refer to the same person).

**B. Wells Fargo Is Entitled To The Safe Harbor Because It Processed The Wire Using Automated Procedures Based On The Account Number Alone And Without Actual Knowledge Of The Discrepancy**

Wells Fargo received the Wire Transfer on October 5, 2018 and processed it automatically, without human intervention, based on the beneficiary account number alone. SUF 3-9.

Specifically, the Wire Transfer was processed automatically by Wells Fargo's electronic systems as explained in the following five steps:

- First, Wells Fargo's Money Transfer System ("MTS") received the Wire Transfer from FedWire at 7:13.39 a.m. Central Time. This step is documented in the "MESSAGE HISTORY SEQUENCE" of the MTS audit trail as "REF #: 181005033570 5-OCT-2018 07:13:39.08." SUF 4.
- Second, MTS immediately utilized the "Autotrieve" software function to confirm that the beneficiary account number contained in the Wire Transfer (x3420) was a valid Wells Fargo account number. This step is documented in the MTS audit trail as: "*AUTOTRIEVE VLD V name & address – CDT Acct. D." SUF 5.
- Third, MTS shared the pending Wire Transfer with an external Wells Fargo application called Global Sanctions Monitoring Operations System ("GSMOS") for screening pursuant to the Office of Foreign Assets Control ("OFAC").[1] This step is documented in the MTS audit

[1] GSMOS screens each field in a wire transfer order against OFAC lists/databases. This initial screening is completely automated. GSMOS assigns a score based on how closely data in a wire transfer order matches data in the GSMOS database. Wire transfer orders that score less than 77% are automatically released with no human intervention of any kind. This is known as a "straight-through" transaction and describes the vast majority of wire transfer orders. In MTS, straight-
(footnote continued)

trail as: "Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT 2018 07:13:42.60" and "*MRSTOP/*MR/MAP/ /5/$$$FED." SUF 6.

- Fourth, MTS received confirmation from the GSMOS database that the Wire Transfer passed OFAC sanctions screening, meaning that the Wire Transfer was not identified for manual review (which, in any event, would only screen for OFAC compliance). This step is documented as: "PASS-POFAC – Passed." SUF 7.
- Fifth, having passed the OFAC screening, the Wire Transfer was completed and the funds paid to Account x3420 at 7:13:46 a.m.—about 7 seconds after it was received. This step is documented in the MTS audit trails as: "OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50." SUF 8.

Accordingly, when the Wire Transfer was processed on October 5, 2018, Wells Fargo did not have actual knowledge that the owner of Account x3420 (*i.e.*, an individual) did not match the name of the beneficiary identified in the Wire Transfer (*i.e.*, RAD Architecture, Inc.). SUF 9.

In fact, Wells Fargo did not learn about the discrepancy until Citibank, N.A. initiated a wire recall request approximately four weeks later on November 2, 2018. SUF 11. By that time, however, the funds had been withdrawn.[2] SUF 10.

---

through wires are notated as having "Passed" OFAC review. Swirtz Decl., ¶11. Wire transfer orders that score above 77% by GSMOS are identified for manual review. However, the review is limited to determining whether the wire transfer order in question has run afoul of OFAC regulations. Swirtz Decl., ¶12.

[2] Even if the funds remained, Wells Fargo would not be able to stop the account holder from withdrawing them. Indeed, the beneficiary's bank must "ignore any instruction by the originator to withhold payment to the beneficiary." Cal. U. Com. Code § 11404, cmt. 3 (emphasis added); *see also* 12 C.F.R. § 229.10(b) (requiring a bank to "make funds received for deposit in an account an electronic (footnote continued)

Plaintiff's anticipated reliance on the system memo "Possible name mismatch in CDT party" is also misplaced. This is an auto-populated entry by MTS in connection with a feature offered by the MTS suite of applications that is *not* licensed by Wells Fargo. Swirtz Decl., ¶20. Wells Fargo chooses not to license the feature—which was designed with the intent to identify a mismatch between the intended beneficiary in a wire transfer order and the holder of the account by comparing more than just the account number—because it does not perform at a level that would make it effective for use at Wells Fargo. *Id.* Accordingly, because Wells Fargo does not license and use this feature, MTS does not compare the intended beneficiary's information with that of the account holder, and the notation "Possible name mismatch in CDT party" does not indicate that an actual mismatch was detected. *Id.* "Possible name mismatch in CDT party" is an auto-populated system memo, created by default, that would have appeared in this case even if there was a perfect match in all respects between the intended beneficiary and account holder. *Id.*

Wells Fargo is entitled to the protections of section 11207(b) because the Wire Transfer was processed automatically, without human intervention, based on the beneficiary account number alone. SUF 3-8. Consequently, Wells Fargo lacked actual knowledge of any mismatch between Plaintiff's intended and actual beneficiary. SUF 9.

This is a complete defense to Plaintiff's cause of action for violation of Commercial Code section 11207.

---

payment available for withdrawal not later than the business day after the banking day on which the bank received the electronic payment"). The California Supreme Court has noted the comments to Article 4A—quoted above—are especially "persuasive in interpreting the statute," as "the Legislature adopted article 4A of the Uniform Commercial Code exactly as written." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 252 (2007).

## IV. CONCLUSION

Wells Fargo complied with the California Commercial Code by processing the Wire Transfer that Plaintiff authorized his financial institution to initiate. Plaintiff's claim for violation of Section 11207 fails. Wells Fargo's motion for summary judgment should be granted.

DATED: June 26, 2020

SEVERSON & WERSON
A Professional Corporation

By: /s/ Loren W. Coe
Loren W. Coe

Attorneys for Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)