LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Date: August 10, 2020
Time: 1:30 p.m.
Crtrm.: 5D

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

Pursuant to Local Rule 56-1, Defendant Wells Fargo Bank, N.A. (erroneously sued as Wells Fargo & Company) submits the following Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment.

## I. UNCONTROVERTED FACTS

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 1. On October 5, 2018, Wells Fargo received a wire transfer order from Citibank, N.A. ("Citibank") for which Grand Bayman Belize Ltd. ("Plaintiff") was the originator. The wire transfer order was for $226,991.45 ("Wire Transfer"). | Declaration of Michelle Swirtz ("Swirtz Decl."), ¶14 and Ex. 1. |
| 2. The Wire Transfer order identified Wells Fargo account x3420 ("Account x3420") as the intended beneficiary account number and listed RAD Architecture, Inc. and Rad Architecture, Inc.'s address. | Swirtz Decl., ¶14 and Ex. 1;<br><br>Compl., ¶7. |
| 3. Wells Fargo processed the Wire Transfer automatically, without human intervention, based on the beneficiary account number alone. | Swirtz Decl., ¶¶14-15 and Ex. 1. |
| 4. Specifically, Wells Fargo's Money Transfer System ("MTS") received the Wire Transfer order from FedWire at 7:13:39.08 a.m. (Central Time).<br><br>This step is documented in the MTS audit trail as "5-OCT-2018 07:13:39.08." | Swirtz Decl., ¶15(a) Ex. 1. |
| 5. MTS immediately utilized the "Autotrieve" function to confirm that the beneficiary account number contained in the Wire Transfer order | Swirtz Decl., ¶15(b) and Ex. 1. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| (x3420) was a Wells Fargo account number.<br><br>This step is documented in the MTS audit trail as: "*AUTOTRIEVE VLD V name & address – CDT Acct. D." | |
| 6. MTS shared the pending Wire Transfer order with an external Wells Fargo application called Global Sanctions Monitoring Operations System ("GSMOS") for screening pursuant to the Office of Foreign Assets Control ("OFAC").<br><br>This step is documented in the MTS audit trail as: "Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT-2018 07:13:42.60" and "*MRSTOP/*MR/MAP/ /5/$$$FED." | Swirtz Decl., ¶15(c) and Ex. 1. |
| 7. MTS received confirmation from the GSMOS database that the Wire Transfer order passed OFAC sanctions screening, meaning that the Wire Transfer order was not identified for manual review (which, in any event, would only screen for OFAC compliance).<br><br>This step is documented as: "PASS-POFAC – Passed." | Swirtz Decl., ¶15(d) and Ex. 1. |
| 8. On October 5, 2018 at 7:13:46.50, Account x3420 was credited with $226,991.45 .<br><br>This step is documented as: "OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50." | Swirtz Decl., ¶15(e) and Ex. 1. |

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 9. On October 5, 2018, when the Wire Transfer order was processed, Wells Fargo did not have actual knowledge that the name of the intended beneficiary in the Wire Transfer order did not match the name of the account holder of Account x3420. | Swirtz Decl., ¶¶15, 20-22. |
| 10. By October 17, 2018, the funds had been withdrawn and Account x3420 closed. | Swirtz Decl., ¶¶16-19 and Exs. 2-4. |
| 11. On November 1, 2018, Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. This was the first time Wells Fargo learned about a potential issue with the Wire Transfer. | Swirtz Decl., ¶¶21-22 and Ex. 5. |

## II. CONCLUSIONS OF LAW

### A. Standard of Review on Motion

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 417 U.S. 317, 322 (1986). The moving party may bear its burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

When the moving party meets its burden, the nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment …[,]" but instead must produce "significant probative evidence" supporting those allegations. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The pleadings define the scope of summary judgment. *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 990-92 (9th Cir. 2006).

Summary judgment may be granted as to each claim as to which there is no material dispute, and partial summary judgment (also known as summary adjudication[1]) may be granted for those parts of the claim as to which the Court determines no dispute exists. Fed. R. Civ. P. 56(a).

**B. The California Commercial Code Governs This Dispute**

Article 4A of the UCC, enacted as Division 11 of the California UCC,[2] governs "Funds Transfers" (hereinafter "Article 4A"). *See* Cal. U. Com. Code, §§ 11101 *et seq*. Section 11104 of the California UCC defines "funds transfers" as:

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an

---

1 *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998); *see also California v. Campbell*, 138 F.3d 772, 776 (9th Cir. 1998).

2 In California, Article 4A was codified as California Uniform Commercial Code section 11101 et seq. Official Uniform Commercial Code section numbers can be transliterated into California Uniform Commercial Code numbers by exchanging "11" for "4A-"; hence, official section 4A-207 becomes California section 11207.

> intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Cal. U. Com. Code, § 11104(a). The wire transfer at issue here fits squarely within the definition of a "funds transfer."

The California Supreme Court has held that Article 4A displaces any common law claim where the gravamen of the claim is that the bank improperly accepted and executed a funds transfer. *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 253-54 (2007) ("Zengen") (involving claims for breach of contract and negligence based on a bank's payment of four allegedly unauthorized wire transfers). The court confirmed that, in enacting Article 4A, it was the Legislature's intent to establish a "detailed scheme for analyzing the rights, duties and liabilities of banks and their customers" with respect to funds transfers. *Id.* at 251-52. And as enacted, Article 4A of the UCC was intended to be the "exclusive means of determining the rights, duties and liabilities" of banks and their customers with respect to funds transfers:

> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, **resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article**.

*Id.* at 252, emphasis added.

Because Plaintiff's claim for "wrongful payment of wire transfer" alleges improper acceptance of a wire transfer, it falls squarely under Article 4A. Article 4A therefore exclusively governs this dispute. *See Chino Commercial Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1174 (2010).

**1. Plaintiff's Claim Is For Violation of Commercial Code § 11207(a)**

Plaintiff's sole claim for "wrongful payment of wire transfer" is based on Wells Fargo's processing of the wire. Plaintiff asserts (erroneously) that the Bank had actual knowledge that the intended beneficiary (identified in the Payment Order) did not match the name of the actual beneficiary (owner of Account x3420). (Compl., ¶¶ 10-12.)

This is a claim for violation of California UCC section 11207(a), which provides that "[s]ubject to subdivision (b) if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur." Cal. U. Com. Code, § 11207(a).

**2. Wells Fargo Falls Within The Safe Harbor Provided By Commercial Code § 11207(b)**

Section 11207(b) provides immunity from liability—a "safe harbor"—for banks that process wire transfers based on the beneficiary account number contained in a payment order. Cal. U. Com. Code § 11207(b). Section 11207(b) provides, in pertinent part:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply: … **if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. The beneficiary's bank

> need not determine whether the name and number refer to the same person.

Cal. U. Com. Code § 11207(b), emphasis added.

In other words, beneficiary banks have no liability for a mismatch between a sender's intended and actual recipient unless they have actual knowledge of the mismatch. The safe harbor allows banks to employ automated means to process high volumes of wire transfers. Cal. U. Com. Code § 11207, cmt. 2 (noting that automated processing is economical and reduces clerical errors).

Knowledge, in this situation, means **actual knowledge** at the time of payment. *TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1032 (2004); Cal. U. Com. Code § 11207, cmt. 2. Actual knowledge of an inconsistency "does not exist unless bank personnel handling the transaction are aware that the name of the owner of the account number designated in the wire bears no resemblance to, and has nothing in common with, the named beneficiary." *TME Enters., Inc.*, 124 Cal. App. 4th at 1025. Constructive knowledge based on account records is not sufficient. *Id.*

Moreover, a beneficiary bank has no affirmative duty to determine whether there is a conflict between the beneficiary identified in the wire instructions and the accountholder (*i.e.*, the "actual" beneficiary). *Id.* at 1032; *accord Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) (applying UCC 4A-207 and noting that the benefits of automated payments would be lost if beneficiary banks had a duty to determine whether the beneficiary account number and name refer to the same person).

In this case, Wells Fargo received the Payment Order on October 5, 2018 and processed it automatically, without human intervention, based on the beneficiary account number alone. *See* Memorandum of Points and Authorities, pp. 7-9. Accordingly, Wells Fargo did not have actual knowledge that the owner of Account x3420 (*i.e.*, an individual) did not match the name of the beneficiary identified on

the Payment Order (*i.e.*, RAD Architecture, Inc.).

Wells Fargo is not liable to Plaintiff because its processing of the wire falls within Section 11207(b)'s safe harbor. Summary judgment should be granted.

DATED: June 26, 2020

SEVERSON & WERSON
A Professional Corporation

By: /s/ Loren W. Coe
Loren W. Coe

Attorneys for Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)