O

# United States District Court
# Central District of California

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD.,<br><br>       Plaintiff,<br><br>       v.<br><br>WELLS FARGO & COMPANY et al.,<br><br>       Defendants. | Case № 2:19-cv-07698 ODW (RAOx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [17]** |

## I.    INTRODUCTION

Before the Court is Defendant Wells Fargo Bank, N.A.'s (sued as Wells Fargo & Company) motion for summary judgment on Plaintiff Grand Bayman Belize, Ltd.'s claim for wrongful payment of a wire transfer.  (Mot. for Summ. J. ("Mot.") 4, ECF No. 17.)  For the following reasons, the Court **GRANTS** the Motion.[1]

## II.    BACKGROUND

On or about October 1, 2018, Grand Bayman received a fraudulent email, purportedly an invoice from one of its vendors, RAD Architecture, Inc.  (Notice of Removal Ex. A ("Compl.") ¶ 5, ECF No. 1-1.)  The email directed Grand Bayman to wire $226,991.45 to a Wells Fargo account ending in x3420 ("Account x3420").  (*Id.*)

---

[1] Having carefully reviewed the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

On October 2, 2018, in accordance with the email, Grand Bayman issued a payment order to its bank to transfer the requested amount to Account x3420 (the "Wire Transfer"). (*Id.* ¶ 7; Decl. Stephen D. Rothschild ¶ 7, Ex. 5, ECF No. 26 ("Payment Order").)

On October 5, 2018, Wells Fargo received the Wire Transfer, which identified the beneficiary as Wells Fargo Account x3420, RAD Architecture, Inc., located in Miami, Florida. (Wells Fargo's Statement of Uncontroverted Facts ("SUF") 1–2, ECF No. 17-3;[2] *see also* Decl. of Michelle Swirtz ("Swirtz Decl.") Ex. 1, at WF 0019, ECF No. 17-2 ("Wire Details"); Payment Order.) Within seven seconds of receipt, Wells Fargo's Money Transfer System ("MTS") processed the Wire Transfer and credited beneficiary Account x3420 with $226,991.45. (SUF 4–8.) By October 17, 2018, the funds had been withdrawn and Account x3420 closed. (SUF 10.) On November 1, 2018, Wells Fargo received a message from Grand Bayman's bank requesting that the funds be returned. (SUF 11.)

On May 23, 2019, Grand Bayman initiated this action to retrieve the transferred funds, apparently based on California Commercial Code section 11207(a).[3] (*See* Compl. ¶¶ 10, 14.) Wells Fargo now moves for summary judgment, arguing that it falls under the safe harbor of section 11207(b)(1) because it processed the transfer automatically (i.e., without human intervention), based on the account number alone,

---

[2] Grand Bayman nominally disputes SUF 2, asserting that the Wire Transfer identified RAD Architecture in Florida as the intended beneficiary. (*See* Grand Bayman's Statement of Genuine Disputes ("SGD") 2, ECF No. 27.) However, Grand Bayman's "disputed fact" is not inconsistent with Wells Fargo's SUF 2, and the evidence to which Grand Bayman points supports the truth of Wells Fargo's SUF 2. Accordingly, the Court finds SUF 2 undisputed.

[3] Grand Bayman does not specify in its complaint the law on which it bases its claim. (*See generally* Compl. (citing no law).) In the briefs, the parties assume the action falls within the ambit of the California Uniform Commercial Code, Division 11. (*See* Mot. 4; Opp'n 3–10 (asserting sections 11207(a), 11209, 11302(a), and 11303(c)).) As discussed further, *infra*, Division 11 of the California Uniform Commercial Code governs Grand Bayman's sole claim, which concerns an unauthorized wire funds transfer. *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 249, 255 (2007); *Chino Com. Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1172 (2010). All code section references in this Order are to the California Commercial Code unless otherwise noted.

and thus had no actual knowledge of a mismatch between the beneficiary account number and name. (Mot. 4.)

Grand Bayman purports to dispute that Wells Fargo processed the Wire Transfer automatically. (SGD 3; Opp'n 8–9, ECF No. 26.) However, the parties do not dispute that Wells Fargo's automated MTS confirmed Account x3420 was a Wells Fargo account and passed an external screening before the MTS credited Account x3420. (SGD 4–8.) The parties also do not dispute that the entire transfer process lasted only seven seconds. (*See id.*) Nevertheless, Grand Bayman contends that Wells Fargo does not fall within the safe harbor because it had actual knowledge of the mismatch between the beneficiary's account number and name when it processed the Wire Transfer. (SGD 9, 11; Opp'n 8–9.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV.  DISCUSSION

Wells Fargo moves for summary judgment on grounds that it is entitled to protection under section 11207(b), because it processed the Wire Transfer automatically without actual knowledge of the mismatch between account name and number. (Mot. 4)

"Article 4A of the UCC governs fund transfers, which includes wire transfers . . . [and] has been adopted in California as Division 11 of the California Uniform Commercial Code." *Chino Com. Bank*, 190 Cal. App. 4th at 1172 (citation omitted). A "'[f]unds transfer' means the series of transactions, beginning with the

originator's payment order, made for the purpose of making payment to the beneficiary of the order[, and] includes any payment order issued by the originator's bank . . . intended to carry out the originator's payment order." *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-CV-04930-LB, 2017 WL 6539843, at *6 (N.D. Cal. Dec. 21, 2017) (quoting Cal. Com. Code § 11104(a)). Here, Grand Bayman (the "originator") requested that its bank (the "originator's bank" or "receiving bank") issue a payment order to Wells Fargo (the "beneficiary's bank") to wire funds to Account x3420, RAD Architecture (the "beneficiary"). (*See* Payment Order; Wire Details WF 0018–19.)[4] Accordingly, Division 11 governs this dispute.

The Division 11 statute upon which Grand Bayman appears to primarily rely, section 11207(a), states:

> Subject to subdivision (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

Cal. Com. Code § 11207(a). Essentially, Grand Bayman claims Wells Fargo violated this provision by accepting the Wire Transfer. (Opp'n 5–7.)

However, section 11207(b) applies where, as here, a beneficiary's bank receives a payment order that "identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons." Cal. Com. Code § 11207(b). In such a case, section 11207(b) expressly authorizes the beneficiary's bank to rely on the *account number* "so long as the bank does not know that the beneficiary's name and account number refer to different persons." *TME*

---

[4] *See* Cal. Com. Code §§ 11103(a)(2) (" Beneficiary' means the person to be paid by the beneficiary's bank."), 11103(a)(3) ("'Beneficiary's bank' means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order . . . ."), 11103(a)(4) ("'Receiving bank' means the bank to which the sender's instruction is addressed."), 11104(c) ("'Originator' means the sender of the first payment order in a funds transfer."), 11104(d) ("'Originator's bank' means . . . the receiving bank to which the [originator's] payment order . . . is issued . . . .").

*Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004); Cal. Com. Code § 11207(b)(1) (permitting reliance on the account number "as the proper identification of the beneficiary of the order"). In this context, "'[k]now' means to have *actual* knowledge." *TME*, 124 Cal. App. 4th at 1031 (emphasis added).

The beneficiary's bank has no duty to "determine whether the name and number refer to the same person." *TME*, 124 Cal. App. 4th at 1032; Cal. Com. Code § 11207(b)(1). This is because "funds transfers should be speedy, inexpensive, and not labor intensive." White & Summers, U.C.C. § 24:6 (6th ed.). Consequently, "[a] very large percentage of payment orders . . . are processed by automated means using . . . the identifying or bank account number without human reading of the payment order itself." Cal. Com. Code § 11207, cmt. 2.[5] Thus, although a payment order may allow inclusion of the beneficiary's name, that information "*plays no part in the process of payment.*" *Id.* (emphasis added). "[I]f a duty to [determine that the name and number match] is imposed on the beneficiary's bank[,] the benefits of automated payment are lost . . . ." *TME*, 124 Cal. App. 4th at 1032 (quoting Cal. Com. Code § 11207, cmt. 2.).

Here, Wells Fargo asserts that it automatically processed the Wire Transfer based on account number alone, with no human intervention and no actual knowledge of the mismatch. (Mot. 7–9.) Wells Fargo further asserts it did not learn about the mismatch until November 2, 2018—four weeks after the transfer—when Grand Bayman's bank requested a wire recall. (Mot. 8.) Based on these facts and section 11207(b), Wells Fargo seeks summary judgment, which the Court finds appropriate for the following reasons.

**A.  Wells Fargo Carries Its Burden**

The undisputed facts support Wells Fargo's assertions. Wells Fargo's MTS received the Wire Transfer on October 5, 2018, at 07:13:39.08 Central Time. (SUF 1,

---

[5] The Official Code Comments to Division 11 are persuasive in interpreting these statutes. *Zengen*, 41 Cal. 4th at 252.

6

4.) The Wire Transfer ordered $226,991.45 transferred from Grand Bayman to Account x3420, under the name RAD Architecture. (SUF 1–2.) Upon receipt, the MTS immediately used an "Autoretrieve" function to confirm the beneficiary account number, Account x3420, was a Wells Fargo account number. (SUF 5.) At 07:13:42.60, the MTS shared the pending Wire Transfer order with an external screening application for screening pursuant to the Office of Foreign Assets Control ("OFAC"). (SUF 6.) The application confirmed to MTS that the Wire Transfer order passed OFAC screening. (SUF 7.) Accordingly, on October 5, 2018, at 07:13:46.50 (approximately seven seconds after the Wire Transfer was received), Account x3420 was credited with $226,991.45. (SUF 8.) Wells Fargo supports these undisputed facts with competent declaration testimony and business records, neither of which Grand Bayman challenges. (*See* Swirtz Decl. ¶¶ 14–15; Wire Details WF 0020–21.) Thus, Wells Fargo adequately supports that it processed the Wire Transfer automatically, without human intervention, based on the account number, and had no actual knowledge of the mismatch at the time.

The case of *TME Enterprises, Inc. v. Norwest Corp.* is instructive. 124 Cal. App. 4th 1021. There, TME requested a wire transfer but provided an account number and name identifying different persons. *Id.* at 1033. The California Court of Appeal affirmed that section 11207(b)(1)'s safe harbor provided the bank immunity because, even though the wire operator manually processed the wire, the bank relied on the account number specified in the wire transfer order and the evidence failed to show that the bank had actual knowledge of the mismatch. *Id.* at 1025, 1033–35. The same result obtains here. Grand Bayman requested a wire transfer and identified the beneficiary by an account number, Account x3420, and a name, RAD Architecture, identifying different persons. No evidence suggests that Wells Fargo had actual knowledge of a mismatch when it processed the wire based solely on the account number. If anything, the facts here support application of the safe harbor more strongly than in *TME*, because, here, Wells Fargo processed the wire transfer

automatically, without human intervention, whereas in *TME*, the wire operator processed the wire manually. *Id.* at 1033–35. Thus, Wells Fargo establishes that, as in *TME*, the safe harbor applies.

**B.     Grand Bayman Does Not Raise a Genuine Dispute of Fact**

Grand Bayman attempts, unsuccessfully, to dispute that the Wire Transfer occurred automatically without human intervention (*see* SGD 3), and that Wells Fargo had no actual knowledge of the mismatch (*see id.* 9, 11).

First, Grand Bayman suggests the Wire Transfer was not *automatically* processed because the Wire Details reflect a wire-transfer routing number associated with a San Francisco branch, while a bank statement for Account x3420 happens to list a direct-deposit routing number associated with a New Jersey branch. (Opp'n 9.) Based on these two data points, Grand Bayman argues that Wells Fargo "redirected" the Wire Transfer funds to New Jersey, and that the "redirection suggests a manual intervention." (*Id.*) But Grand Bayman fails to explain how an account holder's direct-deposit routing number being listed on their bank statement indicates, in any way, that a *manual* redirection occurred. (*See id.*; SGD 3.) Indeed, this "evidence" is irrelevant to the question of whether the Wire Transfer was automatically processed, and Grand Bayman fails to raise any genuine dispute as to that established fact. *See Matsushita*, 475 U.S. at 586 (discussing that a non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts" to raise a genuine dispute).

Next, Grand Bayman contends that Wells Fargo knew about the mismatch between the beneficiary account number and name because the account information on file for Account x3420 gave Wells Fargo constructive knowledge. (SGD 9, 11.) Even assuming Wells Fargo had constructive knowledge, however, the California Court of Appeal rejected this very argument in *TME Enterprises*. There, TME argued the safe harbor provision did not protect the bank from liability because signature cards on file for the named beneficiary gave the bank constructive knowledge that the

named beneficiary did not match the identified account number. *Id.* at 1033. The court found that "[c]onstructive knowledge . . . is insufficient to establish a violation" where actual knowledge is required. *Id.* (citing U.C.C. § 4A-207, cmt.2). The same applies here: constructive knowledge does not equal actual knowledge, and Grand Bayman fails to raise a genuine dispute regarding Wells Fargo's lack of actual knowledge.

Finally, Grand Bayman suggests that Wells Fargo had actual knowledge of the mismatch between beneficiary name and number because the words "possible name mismatch" appear in the Wire Details. (Opp'n 8.) However, Wells Fargo establishes in its moving papers that this phrase appears as the result of a missing MTS software application and, consequently, rather than indicating an actual mismatch, the phrase would have appeared in the log even if all respects of the transaction matched perfectly. (Mot. 9; Decl. Swirtz ¶ 20). Grand Bayman does not address this point and offers no evidence beyond the phrase's mere appearance nor any explanation in response. (*See* Opp'n 8.) This is insufficient to raise a genuine dispute of fact. *See Addisu*, 198 F.3d at 1134, 1142 (requiring more than a mere scintilla of contradictory evidence to survive summary judgment).

In short, even construing all reasonable inferences in Grand Bayman's favor, no reasonable juror could conclude a human intervened in the Wire Transfer or that Wells Fargo had actual knowledge of the mismatch at the time it processed the transfer.

**C.     Grand Bayman's Remaining Arguments Fail**

Grand Bayman asserts a number of additional arguments that the safe harbor of section 11207(b) does not apply or that processing the wire transfer was nevertheless wrongful. (*See generally* Opp'n.) Each fails.

*1.     Complete Disconnect Between Fraudulent and Intended Beneficiary*

Grand Bayman argues that the mismatch between the name and address of the fraudulent beneficiary—Julieta Aquino in New Jersey—and the intended beneficiary—RAD Architecture in Florida—constitutes a "complete disconnect," not

entitled to protection under the safe harbor. (Opp'n 1, 7–8.) On this issue, Grand Bayman cites *TME* for the proposition that a bank "may not take advantage of the section 11207(b) safe harbor if there is a 'complete disconnect between the names.'" (Opp'n 8 (quoting *TME*, 124 Cal. App. 4th at 1034).) But the language Grand Bayman omits and the context of this quote demonstrate its inapplicability. First, the actual language from *TME* is that a "bank should not be exposed to potential liability for accepting a wire unless there is a complete disconnect between the names." *TME*, 124 Cal. App. 4th at 1034. Contrary to what Grand Bayman represents, this language does not completely bar application of the safe harbor when a complete disconnect exists. Second, *TME* is distinguishable from the present case because in *TME*, a wire operator *manually* reviewed and processed the wire transfer. *See id.* at 1034 (discussing that, just because a wire operator manually reviews a wire transfer, that "does not mean . . . that the employee has actual knowledge that the name and the number refer to different people."). Although a complete disconnect might preclude applicability of section 11207(b)'s safe harbor when a wire transfer is manually reviewed by a human who should recognize a glaring mismatch, Grand Bayman fails to persuade that same principle should apply when a wire transfer is automatically processed without human intervention, as is the case here.

Grand Bayman's reliance on *Venture Recycling Group, Inc. v. JPMorgan Chase & Co.*, on this point is equally unavailing. (*See* Opp'n 8 (citing *Venture Recycling*, No. CV 19-2253-MWF (KSX), 2019 WL 4543104, at *5 (C.D. Cal. July 9, 2019)).) In that case, the court denied a motion to dismiss because it found the plaintiff had sufficiently alleged actual knowledge and a complete disconnect. *Venture Recycling*, 2019 WL 4543104, at *5. Here, the burden on summary judgment is higher than at the pleading stage. *See Celotex*, 477 U.S. at 324 (discussing that the non-moving party must go beyond the pleadings to survive summary judgment). Grand Bayman offers nothing to support that any Wells Fargo employee reviewed the Wire Transfer

such that she would have had an opportunity to notice the discrepancy. The "complete disconnect" theory is simply inapplicable on these facts.

### 2. *Alternative Statutory Grounds for Relief*

Finally, Grand Bayman argues that payment of the wire transfer was wrongful under various other sections of Division 11. (*See* Opp'n 3–10 (seeking to apply sections 11209(c), 11302(a)(1), and 11303(c)).) However, section 11207 "resolves the issue" of a beneficiary bank's responsibility "in carrying out a payment order in which the identification of the beneficiary by name and number is conflicting." Cal. Com. Code § 11207, cmt. ¶ 2. As the issue here stems from a conflict between the provided beneficiary name and number, section 11207(b), and the analysis above, clearly governs.

Nevertheless, Grand Bayman's arguments under other provisions also fail. Grand Bayman contends Wells Fargo wrongfully accepted the transfer under section 11209(c) because that section requires the beneficiary to have an account with the receiving bank and RAD Architecture did not. (Opp'n 3–5.) However, Grand Bayman studiously ignores that the identified beneficiary Account x3420 *did* have an account with Wells Fargo. (*See* SUF 5; Wire Details WF 0020.) Regardless, "acceptance by the beneficiary bank [Wells Fargo] does not create any obligation to the sender [Grand Bayman]." Cal. Com. Code § 11209, cmt. 4. Lastly, on their face, neither section 11302(a) nor section 11303(c) apply to Wells Fargo in its role as the *beneficiary's bank* here. *See id.* §§ 11302(a) (providing the obligations of the *receiving bank*); 11303(c) (providing that "issuer of the erroneous order [Grand Bayman] is entitled to recover from the *beneficiary* of the order") (emphasis added).[6]

## V. CONCLUSION

The undisputed facts demonstrate that Wells Fargo did precisely what section 11207(b)(1) permits: it relied on an account number in processing a wire transfer without knowing the beneficiary name and number referred to different persons. Cal.

---

[6] The Court finds Grand Bayman's remaining arguments equally unpersuasive and/or unsupported.

11

Com. Code § 11207(b)(1). "For originators and other senders[,] the message embodied in [section 11207(b)] is that they should take steps to see that the numbers on their messages are the correct numbers. They should take no satisfaction in the fact that the proper names appear on the messages." *TME*, 124 Cal. App. 4th at 1037 (quoting White & Summers, U.C.C., § 24-6). Grand Bayman may have failed to heed the message, but it may not now find satisfaction in having listed the proper name.

Construing all reasonable inferences in Grand Bayman's favor, Wells Fargo establishes that it processed the Wire Transfer automatically based on the account number provided, without actual knowledge of a mismatch between the beneficiary name and number. Grand Bayman fails to raise a genuine issue of fact to dispute that Wells Fargo is entitled to the protections of the safe harbor. Accordingly, the safe harbor applies, and Grand Bayman's claim for wrongful payment of a wire transfer fails as a matter of law. The Court **GRANTS** Wells Fargo's Motion for Summary Judgment. Wells Fargo shall submit a Proposed Judgment within seven days of the date of this order.

**IT IS SO ORDERED.**

January 21, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**